Good morning. May it please the Court, I would like to reserve two minutes of my time for rebuttal. You're really supposed to keep track of your own time. You have a big clock over there. Yes, sir. Thank you. The following facts are not in dispute in this case. The Valenzuelans, my clients, ordered this upgrade system, which was supposed to provide two levels of protection. A primary telephone connection and a backup cell phone connection, cellular connection. You'll see some letters associated with it. The primary is the H account, that's the telephone account. The secondary account, the cell backup, is the U account. They ordered it, they paid for it, they paid for the installation. Also not in dispute. When the installer came to do the installation, the installer couldn't do the installation. He was not able to install the telephone as the primary and the cell as the backup. In fact, he couldn't install the telephone account at all. And he left the premises only installing the U account, the cell account, as the only account. So instead of having this parallel protection, primary phone, secondary cell, you only had the cell. No primary connection. It's also undisputed that when he left the installation, he told the Valenzuelans, everything's fine, it's been properly installed, everything's good. There's also no question about it that the Valenzuelans, after the installation, were billed and paid for this parallel protection. They were billed for a telephone primary and a cell backup and paid out of their own pocket money for a telephone primary and a cell backup. Also not in dispute. It's also not in dispute that three times between the installation, which occurred on July 10th, and the burglary, which occurred on September 20th, on three different days, on the 19th of each month, so that would be July 19th, August 19th, and September 19th, that signals were sent, you know, they do these automatic tests, that signals were sent and that ADT received the signal saying that the account was out of service. OOS, that's the terminology they use, out of service. There's also no dispute that when the burglary occurred, the alarm sent the signal to ADT as it was supposed to, even though it was only the cell and not the telephone and primary, but that because the account was out of service, was coded by ADT as out of service for some reason, that it never got to the screen of the person, of the ADT operator, so it never got acted upon. Yes. You've got the point of your narration that I'm particularly interested in, which is this. What is your evidence as to the reason that ADT reported the Valenzuela's account as out of service? We have no firm explanation. No. That's important because one can say that the service was, quote, through some computer glitch, which would be accidental, without any negligence on the part of anyone, or you can say, raise the felociter, the thing speaks for itself, if it's out of service, it has to be ADT that did it, but can you say that the lack of service was due to any intentional or reckless act of ADT? Well, the answer is yes, and if I may respond. What's the evidence that the account was reported out of service due to an intentional act of ADT? Well, if I may back up for one second and say there's no question that it was ADT. Let me just ask you one quick question, if you don't mind. When that out of service signal comes, did you say that the people at MAN, the service center there, never got any kind of information that there was an account that was out of service? My understanding is, and again, I'm not inside of ADT, my understanding is that when you have the operators standing in front of the screen and who are supposed to, if a signal comes in, report it to the police, report it to the... Yeah, yeah, you don't have to give us all the details. It never got to that person's screen because ADT had marked the account out of service. Now, I will say to you this... Could you tell me the evidence that shows that ADT marked it out of service, A, because of an intentional act, and then B, out of recklessness? Okay, the answer is there's no evidence that they marked it out of service, out of an intentional act or reckless act. What there is evidence of is that they installed it improperly, they fraudulently misrepresented to the valance whalers that they installed it properly, and we surmise... Let's talk about fraud. Yes. There's an affirmative representation that it was installed properly. That's correct. ADT knew at the time that that representation was made that that was a false representation? Absolutely. And what's your evidence for that? We have the testimony of Mr. Wright, who's the installer. He's having these discussions with his... When he does the installation, there's someone who he's communicating with over at the ADT center, and we actually have the screenshots setting forth their... They're almost impossible to read, so you have to go to the deposition, but we actually have the screenshots that were produced by ADT of the communication that was going on between Mr. Wright and this woman, I think her name is Miller, who was helping him with the installation through headquarters. So Wright knows that the primary line is not working. He testified to that, and it's... And only the secondary line is working, and that's why he makes his notation. That's right. And yet he turns around to Mr. Valenzuela before he leaves, and he says, Hunky-dory, the whole system's working fine. You've got nothing to worry about. He says to the valance whalers, everything's fine. Now, you asked a fair question. I don't think anyone at ADT intentionally coded it out of service. What happened is, you see, the cell is supposed to be only the backup. When the primary wasn't installed, the account, the cell was marked out of service because there was no primary account to tether it to. The primary account, the H account, was never set up. That's the telephone primary, and we actually say this. It's in footnotes three of our brief. Now, let me ask you a question that goes to the technique involved here. If the secondary cell detection, motion detection works and sends a signal to ADT saying there's someone in here who shouldn't be in here, does it take the primary connection to forward that to the police? ADT can do it themselves. Had the cell not been marked as out of service, it would have been fine. It would have been transmitted. It was transmitted. It just didn't pop up on the screen. So what's the evidence as to why the cell was marked out of service? Again, there's no specific evidence as to why the cell was marked out of service. The only inference that I can draw, and I think that anyone can draw, is what I just mentioned to you, that there was no primary account to tether the cell backup to. It's supposed to be an H telephone primary account with this U cellular backup account. But when it's not there, and Mr. Moon... Probably that cell phone that's hooked up has got its own batteries. And if the primary isn't working, the secondary, or the cell, is operating on a battery. And batteries were out. But there was a... I don't want to mislead the court. There was a signal transmitted at the time of the burglary to ADT. It just never got to the screen in front of the operator because of the... Well, maybe it was some weak signal that was sent out. And it's enough to just let them know at the monitoring center. Is it your position that when a primary is out of function, that will cause the screen to show up that the account has been out of service? That's my inference from the... But it cannot be because the secondary becomes activated when the primary is out of business. If some burglar comes and cuts the wire, they're pretty obvious. It's not hard to find. Once you cut that, then the primary sends a signal if it's got a good battery. That's probably the answer. It may very well be. It's just not in the record. And I want to point out that Mr. Mooney, who is the ADT... So you understand who Mr. Mooney is. He's the ADT... He's their professional testifier. He goes all around the country. He works for ADT. His primary job is to testify on all these ADT cases around the country. He said that had the primary been hooked up properly, it would have transmitted a signal. It's a completely separate account. The only inference to be drawn from his testimony is that there's no reason that the primary wouldn't have transmitted and would have been picked up. It's only the U account, the cell account, that was marketed out of service. And there's no reason that had the H account been hooked up, which it never was, and Valenzuela's were lied to about it, there's no reason that the H account would not have transmitted a signal which the operator would have received. Mr. Steiner, let me take you to another point that's been raised by the defendant and see what your answer is. You've got a contract. Yes. It's got every conceivable defense in the world written in there, every attempt to avoid liability, including the declamation that they're not insurers. But it does have a liquidated damage clause under 1671 of the Civil Code. Why doesn't that mean that you get $1,000, period? Because of Section 1668 of the Civil Code. Section 1668 of the Civil Code prohibits contracts of exoneration. Exactly. This is not exoneration. They're paying you $1,000. It is exoneration, and the courts have interpreted it as such. For instance, the Fireman's Fund case, which I cite, was this very issue. It was a case where Fireman's Fund, the sub-regor, or the sub-regee, I forget, of the insured, was suing the alarm company, and the court clearly said, had there been gross negligence, if there's evidence of gross negligence, you can't enforce the limitation, the $1,000, the limitations in the contract, they can't be enforced. So the ---- If there's gross negligence, I thought the only basis of avoiding 1671 was if at the time of the entering into the contract, the limitation was unreasonable. That's in the absence of clauses under 1668. That's if there was no issue of gross negligence or fraud. Once there's issues of gross negligence or fraud, Section 1668 governs that, and you have the California Supreme Court case, the Santa Barbara case, and 1668 says that all contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud or willful injury, etc., are against public policy. That's what it says. But the Santa Barbara case said, because you'll notice the words gross negligence are not in Section 1668, so what the Santa Barbara court did, the California Supreme Court, and if you read the decision, it's a very long decision, but they go through all the laws of all the states, and almost all of the states, provide that you cannot exempt your way out of gross negligence, and the Santa Barbara court says, yes, we agree with those other states, and you can't contract your way away for liability for your gross negligence. So it just... Do you agree with the defendant on another theory, that as to a claim for tortious breach of contract, like we have in the insurance area for bad faith breach of contract, like we have in the employment area for bad faith breach of employment contract, like we have, in my experience, in the funeral area, when the incineration is not of the person who they thought they were, all those social policy reasons allow for a tort arising out of a contract. What case do we have in California, which we have to apply here, which recognizes a tort duty as against an alarm company? Well, you do. You do have the California Supreme Court case of Robinson Helicopter Company v. Dana Corp. And what happened in that case is the plaintiff contracted to buy some helicopter parts from the defendant, and it had to be according to certain certifications, unbeknownst to the plaintiff, the defendant changed the certifications, but continued to represent to the plaintiff, no, these are the certified, these are the exact things, you certify these are in conformity when they weren't, and the California Supreme Court allowed them to collect tort damages and said you can have a fraudulent breach of the contract. The facts here are identical. You have the installer coming in and saying everything was properly installed when it wasn't properly installed. So you have the exact same situation. But I would say to you it's almost a red herring, if I may, because we're not asking for punitive damages. We're not asking for emotional distress damages. We're asking for contract damages. We're asking for all damages that flow from the contract. We're asking that the we're not asking for these typical tort damages. And, in fact, the court's, the district court's reliance on the Ehrlich v. Menezes case was really misplaced, and I think the court went really far there because we're asking for contract damages and damages arising from their gross negligence in the installation of the contract, and we ask that we allow to put in a fraud cause of action also. So the, I know I only have a minute left, but it's really, we're asking. No, you're over a minute. When you see the time with the red line. Oh, gosh. You're over. Go ahead and wrap up. So it's really a misunderstanding by the district court. It is, it is, this is a breach of contract case where ADT wants to enforce this limitation of liability, and we say, no, you cannot because you violated 1668. You committed fraud in the installation here. You didn't tell the Valenzuelans. You committed fraud. Therefore, you can't rely on any of your limitations of liability. You're responsible for your conduct, and that's what this case is about. Thank you. Counsel represented that the plaintiffs in this action are seeking remedies under your commercial contract, the remedies that flow from that contract, and as the Court has identified Section 1671 provides it in a commercial context such as this, liquidated damages provisions are presumptively reasonable, and you are entitled to exactly what you bargained for under those circumstances. And if counsel and the plaintiffs are indeed pursuing their contractual remedies, that is what the law provides for, not just the civil code, but years of case law interpreting that code and interpreting various codes that I think the Court has identified aren't on all fours and do not apply in this context. Before getting into any more of the law, though, I think the Court should take a step back and look procedurally where this case is at because the briefing here really gets the cart ahead of the horse. This idea of fraud and conspiracy and all of these theories to try and in-run around the contractual bargain comes up for the first time literally on the eve of trial, weeks outside of trial, full discovery record. There's never a motion for leave to amend, never mind the fact that fraud is a 9-D pleading standard because it is inherently recognized that that's a kind of claim that requires different kinds of notice and is going to require more extensive discovery. So the word fraud is uttered for the first time in oral argument. There's insinuation about an oral motion to amend if fraud's not in the case because there's a concession that it wasn't. And now fraud has, for the first time, really taken a life of its own, as if it's being presented for the first time at that summary judgment or even earlier. You know, lawsuits are living organisms. They start out, they grow, they're like microbes, you know. They change, mutations. That's the way life is. Agreed, Your Honor, and as litigators we know that all too well, but you still have to follow the rules of civil procedure. So in a case like this, the remedy is very simple. In the first instance, you ask the district judge, through a properly presented motion, to add that cause of action. And then we would have a response to that, which at that late stage would have been vigorously opposed because you have formulated all of your discovery, your legal theories, presented your witnesses, deposed witnesses, filed summary judgment motions, and then the district court is, in the first instance, given its opportunity to say... Then you go back and you have more discovery, right? But that happens from time to time, of course. It keeps the law of practice alive. Well, it does, and in certain instances that's why Rule 15 provides the standard of death. But you've got to let the district court say, here's everything that's happened. It's the manager of the case that controls discovery and all other aspects of it. Bill, when the installer left, there's some evidence that... Well, he had to know that the primary line wasn't working because they have to check it, right? Correct. Thoroughly. Correct. But the battery-operated system, the cell phone that they hooked up, that was working? Correct. Okay. Doesn't that operate off a battery? It does. It does. It has an independent power source, too, though. What? It has an independent power source, too. It's got a battery backup. But here's the real issue. We know that the alarm system... What's the independent power source? The control panel. What? The control panel for the alarm system. On the premises? Correct. Someone cuts the wire. You get that. In case the primary, someone cuts the wire. Come up with bolt cutters, boom, you know. And they usually put those wires in kind of low under the eaves. They're easy to see. And so you get the other one. Someone cuts it, or if it's inoperative, then it switches to the secondary. Now, you say the secondary has an independent power source. Yes, and we know the... Where does that come from? But here's the issue, Gunnar. We know that the secondary is functioning and the alarm system itself is functioning because we get all the alarm signals. ADT gets the alarm signals. What if someone pulled the master electrical switch? If somebody defeats the alarm system without redundancy, you're going to have no communications with ADT. You know, if someone pulls out, you know, just turns electricity off, then the cell phone still operates. Correct, until its battery dies. Until its battery dies, okay. But as it relates to the facts here, I mean, the issue that has any causal interplay with plaintiff's frustration in this case and the consequential loss that occurred is simply the fact that the system was coded out. And the record and ADT's witnesses testified that the most likely cause for that was a computer issue. But at bottom, nobody positively knows. Nobody really knows why, except they know that the whole system was improperly installed. Your Honor, that has no interplay whatsoever with the claim for the consequential loss. Doesn't ADT, when a new installation goes in, don't they test the system? They do. Who tests it? A technician or an installer. Is that the guy who said he didn't get the job done? He would be one of the people who thinks that. Well, don't you have people in the computer, where the computers come in, you know, what do they call it? You know, you've got all these people that answer the phones and all that. Correct. At that computer center, doesn't ADT have an independent way of testing the system after it's been installed by their installer? The system was tested. It was sending signals, all of the devices on premise were working, and it worked the night of the burglary. The flaw of what happened, what caused no dispatch, was the people at the monitoring center are getting these signals, and because it's coded out, they come in and they're not responded to. Why was it coded out? The record doesn't conclusively establish that. We know the primary line wasn't working. That's true. That's true, but there's still a pathway to communicate, and somehow the computer coded the system out. We don't know exactly when. Isn't that gross negligence to send a technician there to the house to install this other device, and he checks it all out and he can't get it working? He tells people that, well, everything's fine. Your Honor, it's exactly what the district court found it was, and that was a breach of contract. And the district court took what I would call a rather extraordinary step of affirmatively entering summary judgment against ADT on the breach of contract line, and we're not appealing that. That doesn't mean that we have to buy that. I understand. It's a reviewing court, but the issue is the court very clearly followed settled precedent on this issue. But it's your device, and then you tell us that you don't know what caused this thing to go haywire. Electronic equipment fails, Your Honor. I mean, that's just you don't always know when something fails. It was failed when he left, you know. But the issue that it comes down to on this appeal, Judge, is this is a commercial relationship. The district court entered a breach of contract. Let me ask you, do you use that same contract where you limit liability to $1,000 with homeowners? Residential customers have different contracts. Is that limitation in there? There is typically a limitation provision in a residential contract as well. Was it $1,000? I'm not sure off the top of my head, Your Honor. No. But the real issue, the driving issue here is there is not a fraud claim in play. There never has been a fraud claim in play. There's not a separate and independent tort duty because the duty to properly install the system, to maintain it, and to make sure you're monitoring the system arises out of it. It wasn't properly installed from the beginning. If that is the case, ADT has not fulfilled its contractual obligations like the district court found was available. No, people rely on ADT to protect them. I understand, Your Honor. They rely on them, and that's what they tell you. We agree. You know, you put in this system, you're going to get protection. Mr. Eblem, these questions are all unrelated to the fact that you have the home security system for all the federal judiciary. I want you to know that. Here's what I want to know. Judge G, you're right. That's true. Well, I'm not on that system because I put my own in, and I didn't go for that other deal, and I don't want to state my reasons. Mr. Eblem, here's where I get it. On reconsideration, the district court found for the party with the burden of proof that you had, in fact, breached the contract, and I'm not familiar with the civil code that Judge Bea and Judge Preggerson are, but as I got the plaintiff's claim here, they say that under 1671 of the civil code, the contract that Judge G enforced by finding a breach and then by finding that your damages were limited to $1,000 violated the civil code because it was unreasonable at the time of the making. Do I get the theory of the plaintiff's case right? I think that's the assertion that was made today, but what the code does provide and how it's been interpreted is twofold. One, it says on its face, in a commercial transaction, business to business like we have here, the amount chosen by the parties is presumed reasonable. Secondarily, all the prior case law in this arena, in the alarm field, because of the indeterminate nature of what may or may not result if damages arise, i.e., we're not an insurer, we don't know exactly how the premises will be used, any amount prior to the amendment of that code where commercial transactions are presumed reasonable have always found as a matter of law from the Better Foods case 60 years ago that the amount chosen in this arena is reasonable as a matter of law. So that has long been the law in this state. And on the tort contract issue, there's never been a fraud claim applied. And for years, particularly since the applied equipment case, it's been made clear in California and elsewhere for that matter that degrees of contract breaches, separate and apart from where the court has identified their statutory regulations in a normal commercial transaction, it was well explained in the allied equipment decision that there are not different motives behind breaches. There are not different degrees of breaches. You can efficiently breach a contract on purpose. A breach is a breach, and we fall back on the notion that you're in the area of contract law because you don't have a separate duty from the promises made. And while those promises are important, the overriding policy in this arena is that we don't create separate tort duties where they don't exist, and we let the parties negotiate what would be a reasonable liquidated damages clause in this case. And that's exactly what happened, and that's why the district judge correctly found that there was no separate tort duty, correctly didn't find any sort of fraud type issue even though there was some analysis performed. That wasn't even necessary to the decision. And there's never been a fraud claim in place. So you're left with, as counsel summed things up, we're suing for our contract damages. This case is about a breach of contract and the damages that we believe flow from that, and the district court in this instance did exactly what the district court should have done, which is to say this is a contract case, commercial parties agreed to a limitation provision, and I'm going to go ahead and take the extra step of entering summary judgment against ADT because it's pretty clear that they didn't fulfill their contractual obligations. And the initial ruling didn't grant summary judgment for you because she found there was a material factors to causation. Correct. Okay. And then the reconsideration motion entered a final judgment. Right. But she found a breach. Correct. Okay. That is correct. And then the only remaining issue, we've got a cross appeal on the question. Wasn't there an implicit provision in the parties of the contract that they conduct themselves in good faith? Yeah, that's an implicit provision. Good faith and fair dealing. Now, that's a contract provision. Or is that? How would you characterize that? I would characterize it as a contract principle. Yeah. And it's one that's not been raised or litigated. Yeah, but that can be an overriding provision. Here, you're going to find that the parties did not perform good faith and fair dealing because their agent went out there and did not properly install this device but told the people who wanted the device in their store that everything was fine, set to go, you know, got nothing to worry about. Your Honor, I would disagree. And then these burglars are in there for three hours. They tripped the motion detectors and everything else. So they were probably professionals, I'm sure. That's probably true, Judge. Let's hope they didn't work for an alarm company. On the contract issue, though, Your Honor, we've never litigated the duty of good faith and fair dealing. What? We have not litigated that issue. It wasn't presented below. And typically it is still subject to any sort of agreements on damages that would exist between parties in a commercial contract. It would still be subject to. We've had, you know, you can waive the tort and sue in contract. You know that? Correct.  Waive the tort and sue in contract. It's called Endebitadas Assumpta under the common law pleadings in which much of our law is derived. Your Honor, I have to admit I'm not too familiar with that last phrase. I have a classmate of mine that was a good trial lawyer in San Francisco. Remember Richard Haas? Who? Yeah, Richard used to use that all the time successfully. He loved that old stuff. I want to just see if there's... I think we're out of time. Yeah, I just want to see. Thank you. May I have 30 seconds, please? Sure. Yeah, let me... Now, ADT does not, or do they periodically, say every three months, every six months, check the status of the security system? They can do that. When you say check the status... Is it working properly? Well, typically in a situation... It depends on the account, for one. But in many instances, there's a monthly timer test that verifies that the communication pathway is still intact. And that would happen in a case like this. And, of course, it was intact. It was just in test mode so that signals wouldn't be responded to. Now, the physical equipment on the premises, that depends on what you contract for, whether or not you're going to go up there and do any sort of maintenance or annual inspections. That depends entirely on the type of system and the contract. But, you know, if the primary wasn't working, to begin with, wouldn't that be known to the monitoring facility? No, Your Honor, not necessarily to the monitoring facility. Well, mine does. I mean, mine is... I think I've had it 20 years or more. You wouldn't necessarily know that because the monitoring center is still getting signals because it's got a valid pathway. So you wouldn't necessarily know. Because some people have their cell backup as their primary as opposed to the landline and vice versa. So the monitoring center knows that it's receiving test signals on a monthly basis or whatever the term would be. Well, but they don't have anyone that physically checks the system out, huh? Physically on site? Yeah. Yes, they do. But that would be a maintenance term, and it depends. There are some customers who don't subscribe to any maintenance, and there are others who have quarterly maintenance inspections. It depends entirely on customer preference, type of account, and ultimately what the customer contracts for. Is ADT the largest in the country now? I believe so. They bought out a lot of other companies. That I couldn't be positive of. I know there's been acquisitions over the years, though. Okay. Thanks. If I may, I wanted to correct one thing that was said incorrectly. I believe you asked, is it our claim that the liquidated damages clause is unenforceable because it's unreasonable? That is not our claim. Our claim is that it doesn't get enforced because of the public policy of Section 1668. You never mentioned 1671 in our brief. It's 1668, and that's with the Santa Barbara case and the Fireman's Fund case, that says all contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his or her own fraud, et cetera, are against the public policy of law. Here we had fraud. When the installer – Did you plead fraud? No, but let me explain. We don't have to plead fraud. We just have to plead the applicability of Section 1668. One of the elements of Section 1668 – Did you do that? Of course. In our opposition to the summary judgment, it was all about fraud. All we have to show is that Section 1668 is operative. That's another thing. All we have to show is that Section 1668 comes into play, and when we prove the fraud, and it's undisputed that when the installer tells the Valenzuelans everything's fine, it's been properly installed, it's undisputed. They admit that that was false. That was just a lie. It was working, but only to sell backup. Not everything was properly installed. And there was no primary connection whatsoever. And once we prove that fraud, Section 1668 comes into play, and the Fireman's Fund case – and it's a one-line quote – liquidated damage provision would not limit the alarm company's liability in the event of gross negligence. Obviously, a fortiori or however that's pronounced, it would not limit it in the event of fraud. All right. We're done. Thank you. And we'll turn off the alarm now. All right. Let me come to Norton v. Astru. That's been submitted on the briefs. It's been submitted on the briefs. Now we come to San Angelo v. Bridgestone.
judges: Pratt, Pregerson, Bea